## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:24-CR-171** |
| **v.** | **JUDGE MARBLEY** |
| **MATTHEW CAREY** | **Sentencing Memorandum of the United States** |

The United States hereby submits its Sentencing Memorandum with respect to Defendant Matthew Carey. Mr. Carey raises one objection, which should be sustained, and one request for a downward departure, which should be denied. For the reasons that follow, a sentence of 46 months of imprisonment and 3 years of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

### OFFENSE BACKGROUND

On March 11, 2022, Defendant Matthew Carey was working as a Franklin County Sheriff's Deputy at the Franklin County Corrections Center. Revised PSR ¶ 16. He was assigned to Pod 1 of the 5-East wing (hereinafter "5E1"). *Id.* One of the pretrial detainees housed in 5E1 was Gmier McCall. *Id.* Other inmates respected Mr. McCall and generally would do what he told them to do. *Id.*

At some point during his shift, Mr. Carey took several inmates from 5E1 to the gym. Revised PSR ¶ 17. Mr. McCall opted to stay in the pod during the recreation time, which enabled him to use the phones more freely. *Id.* After escorting most of the inmates to the gym, Mr. Carey returned to the fifth floor. *Id.*

While there, Mr. Carey disclosed to Mr. McCall that a pretrial detainee this Sentencing Memorandum will refer to as Victim A had been charged with Rape of a Person Less than 13 Years of Age. Revised PSR ¶¶ 17–18. Mr. Carey knew that revealing this charge to Mr. McCall

created a substantial risk that Victim A would be assaulted by others at the jail because of the nature of the charge. Revised PSR ¶ 17. Nevertheless, Mr. Carey willfully disclosed the charge and failed to take reasonable measures to protect Victim A. (Plea Agreement, R.29 at 82.)

For his part, Mr. McCall understood Mr. Carey's actions as directing and authorizing Mr. McCall to assault Victim A. Revised PSR ¶ 18. As a result, when the other inmates returned from the gym, Mr. McCall asked Victim A whether he was, in fact, held on a charge of raping a minor. Revised PSR ¶ 19. When Victim A denied that he was, Mr. McCall asked the same question again, loud enough for the other inmates in the pod to hear. *Id.* Mr. McCall anticipated that if the other inmates in the pod found out about Victim A's charge, he would be physically attacked—consistent with what Mr. Carey had encouraged—even though there was no legitimate, lawful reason for anyone to use force against him. *Id.* In response to Mr. McCall's question, Victim A admitted that he was, in fact, in custody on that charge, but told the inmates that he did not do it. *Id.*

Multiple inmates assaulted Victim A. Revised PSR ¶ 20. While the assault was occurring, Mr. Carey did not intervene or take any precautions to protect Victim A from the serious risk of harm he faced as a result of his pending charge being revealed. *Id.* Victim A suffered a neck fracture, lip lacerations, and bruises, and was taken to the hospital. *Id.*

## PROCEDURAL BACKGROUND

On November 20, 2024, the grand jury returned an Indictment charging Mr. Carey with one count of Conspiracy Against Rights, in violation of 18 U.S.C. § 241; one count of Deprivation of Rights Under Color of Law—Unreasonable Force, in violation of 18 U.S.C. §§ 242 and 2; and one count of Deprivation of Rights Under Color of Law—Deliberate Indifference, in violation of 18 U.S.C. § 242. (Indictment, R.4 at 5–9.) Mr. Carey was arrested

2

and had his initial appearance on December 3, 2024. (Minute Entry, R.7.) Magistrate Judge Deavers released him subject to certain conditions, including that Mr. Carey not violate any federal, state, or local law while on release and that he engage in substance-abuse testing and treatment. (Order, R.10 at 19–21.) At his December 12, 2024, arraignment, Mr. Carey initially pleaded not guilty to all charges.

On May 5, 2025, the Parties filed a Plea Agreement, in which Mr. Carey agreed to plead guilty to Count 3, which charged him with violating Victim A's civil rights by being deliberately indifferent to the substantial risk of serious harm to the inmate. (Plea Agreement, R.29 at 77.) The Parties also agreed to certain factors under the U.S. Sentencing Guidelines. They agreed the Base Offense Level should be 14, because the assault on Victim A met the legal definition of Aggravated Assault. (*Id.* at 79.) They agreed the offense level should be increased by 5 levels because the victim sustained Serious Bodily Injury, and another 6 levels because Mr. Carey committed the offense under color of law. (*Id.*) The Parties acknowledged that Mr. Carey may be entitled to a 3-level decrease because of his acceptance of responsibility. (*Id.*)

The Probation Office released the Final PSR on October 16, 2025 ("PSR"), and released a Revised Final PSR on January 12, 2026 ("Revised PSR"). Sentencing is scheduled for February 6, 2026.

## ARGUMENT

The Probation Officer calculated that Mr. Carey's Total Offense Level is 24 and his Criminal History Category is I. Revised PSR ¶¶ 43, 47. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges of 51 to 63 months of imprisonment, a fine of $20,000 to $200,000, and supervised release of not more than 3 years. Revised PSR ¶¶ 81, 84, 90.

3

There is one unresolved objection to the PSR: Mr. Carey objects to the application of a two-level leadership enhancement. *See* Revised PSR ¶¶ 35–36. He also seeks a downward departure on the ground that he committed the crime while suffering from a significantly reduced mental capacity that contributed substantially to his commission of the offense. The United States will first address the objection, then will turn to the departure, and finally will address the statutory sentencing factors under 18 U.S.C. § 3553(a).

## I.     Mr. Carey's objection regarding his role in the offense should be sustained.

Mr. Carey objects to the PSR's application of a two-level enhancement under U.S.S.G. § 3B1.1.(c). (*See* Carey Obj. Letter, PSR pp. 31–33 of 54.) If his objection were sustained, the Total Offense Level would decrease to 22 and the corresponding advisory guidelines range would be 41–51 months.

The sentencing guidelines provide that a defendant's offense level should be increased by two levels if he was an "organizer, leader, manager, or supervisor" in any criminal activity that involved fewer than five participants and was not otherwise extensive. U.S.S.G. § 3B1.1(c). Comment 4 of § 3B1.1 identifies a non-exhaustive list of factors to consider in determining whether to apply the enhancement, including "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 app. n. 4.

Although the United States believes that Mr. Carey is more culpable than Mr. McCall in large part because Mr. Carey was a public official occupying a position of trust, the United States agreed in the Plea Agreement that a role enhancement should not apply. (*See* Plea Agreement,

4

R.29 at 79.) This agreement was reached in part due to the ongoing litigation in Mr. McCall's case. In that case, the Court granted a role reduction to reflect the difference in each defendant's culpability relative to the other. No further role enhancement is necessary to distinguish their relative culpability. In the context of the litigation that has already occurred, and in light of the Plea Agreement, the United States does not oppose the objection.

For these reasons, the United States does not oppose Mr. Carey's objection. If the Court were to sustain the objection, his offense level would be 22, and the guidelines imprisonment range would be 41–51 months.

## II. The Court should deny a departure under U.S.S.G. § 5K2.13 because that guideline has been repealed and because Mr. Carey does not meet its standard in any event.

Mr. Carey contends that he should receive a downward departure under U.S.S.G. § 5K2.13 for "Diminished Capacity." (Carey Obj. Letter, PSR pp. 32–33 of 54.) As of November 1, 2025, that guideline has been repealed. *See* U.S. Sentencing Commission, Amendment 836, Amendments to the Sentencing Guidelines (effective Nov. 1, 2025), *available at* https://www.ussc.gov/guidelines/amendment/836. Amendment 836 deleted most departures previously provided by the guidelines, including § 5K2.13. *See id.* That is reason enough to deny the departure.

Even if there were reason to use an older version of the guidelines, Mr. Carey's request for a departure on the grounds of Diminished Capacity should be denied. In seeking a departure on this ground, Mr. Carey faces an uphill battle. Before it was deleted, the guideline provided that a "downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13 (2024). To suffer from a "significantly reduced mental capacity" means to have a "significantly impaired

5

ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 app. n.1 (2024). When the guideline was effective, it listed certain circumstances where a departure should *not* be granted, including two that describe this case: "(1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants," and "(2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13 (2024).

Both exclusions would prevent a departure here. First, Mr. Carey's mental capacity was reduced by his voluntary use of alcohol and cocaine. He used alcohol to manage work-related stress, which affected his judgment. Revised PSR ¶ 62. When he was working as a deputy, he used cocaine every day. Revised PSR ¶ 67. His alcohol and cocaine consumption were at their highest when he worked for the Franklin County Sheriff's Office. Revised PSR ¶ 68. Because any reduction in mental capacity was substantially caused by this substance abuse, a departure would not be warranted. Furthermore, a departure would not be appropriate under § 5K2.13 because his offense "involved actual violence" and indicates a "need to protect the public." While the Court may take any of Mr. Carey's history and characteristics into account when evaluating the sentencing factors under 18 U.S.C. § 3553(a), he has not established that U.S.S.G. § 5K2.13 should apply to his case or that he is entitled to a departure.

### III. Based on the statutory sentencing factors, the United States recommends a sentence of 46 months of imprisonment.

Turning to the § 3553(a) factors, the United States recommends a sentence of 46 months of imprisonment and a 3-year term of supervised release.

6

*Nature and circumstances of the offense.* As a result of Mr. Carey's acts, Victim A suffered serious injuries from an aggravated assault. Mr. Carey devised the scheme. He then used his position of power to disclose confidential information to Mr. McCall, knowing that it would likely result in violence against Victim A. No inmate should ever suffer an unprovoked assault in custody under any circumstance, and certainly not with the permission of a law-enforcement officer.

Mr. Carey's crime also reflects a poisonous view—too widely shared—that extrajudicial violence is warranted against inmates who have been charged with certain disfavored crimes. Every person in pretrial custody deserves protection, no matter what crime he is accused of committing. Victim A was entrusted to Mr. Carey's care. Mr. Carey had an obligation to protect him, but instead set in motion an assault against him because he had been accused of a particular crime. The seriousness of the offense supports the recommended sentence.

*History and characteristics of the defendant.* Mr. Carey's history and characteristics also call for a within-guidelines sentence. His background does not account for or mitigate the offense conduct. Mr. Carey described growing up in a "loving," "middle-class home" in "good neighborhoods." Revised PSR ¶ 51. His home was free from abuse or neglect, though he reports childhood trauma. Revised PSR ¶ 52. In 2016, Mr. Carey graduated from high school, where he earned a 3.0 GPA, played football, and ran track. Revised PSR ¶ 70. Since then, he has been consistently employed, including at Mount Carmel East Hospital, Ohio Mulch, and the Franklin County Sheriff's Office. Revised PSR ¶¶ 73–75. He also served in the Ohio Army National Guard and earned his certification as an Army Medic. Revised PSR ¶ 77. Little in his background would have predicted that he would stand convicted of a federal crime.

The Revised PSR details difficulties that he has had, including the childhood trauma and work-related anxiety and panic attacks. Revised PSR ¶¶ 52, 59. These circumstances, however, do not explain or mitigate his sentence such that a below-guidelines sentence would be warranted. His other personal characteristics do not take him outside the heartland of similar offenders and therefore do not justify a downward variance.

*Specific deterrence and need to promote respect for the law.* Mr. Carey's noncompliance on pretrial release shows that specific deterrence is an important interest here. Since his arrest, Mr. Carey has tested positive for cocaine three times. The Pretrial Services Office tested him on December 3, 2024, the day of his arrest, and he tested positive for cocaine. On September 11, 2025, Pretrial Services filed a Bond Violation Report reporting additional cocaine use. Mr. Carey disclosed that he had used cocaine on August 30 and September 7, 2025, and a urine test confirmed his use. The Pretrial Services Officer recommended no action and referred Mr. Carey to outpatient treatment. On October 28, 2025, however, Mr. Carey again tested positive for cocaine. Substance abuse is highly correlated with recidivism. Mr. Carey continued to engage in illegal activity while under the supervision and support of Pretrial Services, which shows the need for the sentence to promote specific deterrence.

*General deterrence.* More broadly, the recommended sentence would afford general deterrence. This sentencing factor is particularly important in cases involving crimes by law enforcement. This case, like many involving defendants who are former members of law enforcement, has garnered substantial media attention, and law-enforcement officers in Central Ohio will be aware of the Court's sentence. The United States seeks a sentence sufficient to deter other law-enforcement officers from engaging in similar criminal conduct.

General deterrence is possible here because the crime was a calculated course of action by Mr. Carey. Many decisions law-enforcement officers have to make involve difficult, split-second decisions. That is not this case. Victim A presented no threat, and no force at all was necessary. Mr. Carey made the calculated decision to instigate an assault against Victim A. This conduct is susceptible to deterrence through sentencing.

*Need to promote respect for the law*. Relatedly, the sentence should promote respect for the law by promoting public belief that officers who promote violence to deprive an inmate of his civil rights will be appropriately held accountable. Whenever a member of law enforcement breaks the law, he damages the trust built by honest officers. And, relevant here, when a member of law enforcement uses an inmate to harm or attack others, those acts erode the trust of the public, of other officers, of the human beings they are tasked with protecting, and of the rest of the legal system. That makes it harder for law enforcement to do its important work.

Given the nature and circumstances of Mr. Carey's offense, his history and characteristics, the need for deterrence, and the other facts and circumstances of this case, the recommended sentence would satisfy 18 U.S.C. § 3553(a).

## CONCLUSION

For the above reasons, a sentence of 46 months of imprisonment and 3 years of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served on counsel of record by filing with the Court's CM/ECF system this 26th day of January, 2026.

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney